IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNDER SEAL A & B | § | |
| | § | |
| Plaintiffs | § | FILED UNDER SEAL |
| | § | |
| | § | 5:04CV 075 |
| | § | |
| VS. | § | PLAINTIFF'S ORIGINAL |
| | § | COMPLAINT PURSUANT |
| | § | TO 31 U.S.C. §§ 3729-3732, |
| | § | FEDERAL FALSE CLAIMS |
| | § | ACT |
| UNDER SEAL C, D, E, F & G | § | |
| | § | |
| Defendants | § | JURY TRIAL DEMAND |

**PLAINTIFFS' ORIGINAL COMPLAINT**

# FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* SHEILA BELL-MESSIER<br><br>Plaintiffs<br><br>VS.<br><br>RO-TECH HEALTHCARE, INC.,<br>INTEGRATED HEALTH SERVICES,<br>INC, RHEMA, INC., ROTH<br>MEDICAL, INC., and TAYLOR<br>MEDICAL<br><br>Defendants | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. _____<br><br>**FILED IN CAMERA AND UNDER SEAL**<br><br><br><br><br>**PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO, 31 U.S.C. §§ 3729-3732, FEDERAL FALSE CLAIMS ACT**<br><br>**JURY TRIAL DEMAND** |

**PLAINTIFFS' ORIGINAL COMPLAINT PURSUANT TO**
**31 U.S.C. §§ 3729-3732, FEDERAL FALSE CLAIMS ACT**

The United States of American, by and through *qui tam* Relator, Sheila Bell-Messier, brings this action under 31 U.S.C. §§ 3729-3732 (the "False Claims Act") to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States and himself and would show the following:

**PARTIES**

1. Relator, Sheila Bell-Messier ("Bell") is a citizen of the United States and a resident of the State of Texas.

2. Defendant RO-TECH Healthcare ("RO-TECH") is a corporation incorporated in the State of Delaware, and doing business in the Eastern District of Texas. Defendant may be served through its registered agent, Corporation Service Company, 701 Brazos, Suite 1050, Austin, Texas 78701.

3. Defendant INTEGRATED HEALTH SERVICES is a corporation incorporated in the State of Delaware, and doing business in the Eastern District of Texas. Defendant may be served through its registered agent, National Corporate Research, Ltd., 800 Brazos, Suite 1100, Austin, Texas 78701.

4. Defendant RHEMA, Inc. is a corporation incorporated in the State of Texas, and doing business in the Eastern District of Texas. Defendant may be served through its registered agent, Corporation Service Company, 701 Brazos, Suite 1050, Austin, Texas 78701.

5. Defendant ROTH MEDICAL, INC. is a corporation incorporated in Colorado, and doing business in the Eastern District of Texas. Defendant may be served through its registered agent Corporation Service Company, 701 Brazos, Suite 1050, Austin, Texas 78701.

6. Defendant TAYLOR MEDICAL is a corporation incorporated in the State of Texas, and doing business in the Eastern District of Texas. Defendant may be served through its registered agent for service.

**JURISDICTION AND VENUE**

7. Jurisdiction and venue are proper in this Court for the following reasons:

   i. Jurisdiction for this Court exists pursuant to the False Claims Act (31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3732(a)) because Relator's claims seek remedies on behalf of the United States for Defendants' multiple violations of 31 U.S.C. § 3729 some of which occurred in the Eastern District of Texas, and because the Defendants transact other business within the Eastern District of Texas.

ii. Venue exists in the United States District Court for the Eastern District of Texas pursuant to 31 U.S.C. § 3730(b)(1) because Defendants are qualified to do business in the State of Texas and conducts business within the State of Texas and within the Eastern District.

**FACTUAL BACKGROUND**

**INTRODUCTION & GENERAL OVERVIEW OF CASE**

8. This suit concerns rampant fraud perpetrated against Medicare and other federal programs, through aggressive billing of durable medical equipment, including respiratory devices ("DME"). To expand and maintain market shares, INTEGRATED HEALTH SERVICES and RO-TECH HEALTHCARE, INC., through their subsidiaries, RHEMA, Inc., ROTH MEDICAL, INC., and TAYLOR MEDICAL (hereinafter collectively referred to as RO-TECH or defendants) deliberately rented oxygen equipment to patients with knowledge that they were ineligible to receive such equipment. The proper procedures necessary to receive compensation for DME from Medicare, which are set forth in more detail herein, generally require a company to honestly represent that the prescriptions for oxygen equipment have the required and necessary paperwork, and that the patient is properly qualified. Under this system it is essential that DME companies ("DMECs") provide complete and accurate information in order for Medicare to determine if reimbursement is appropriate.

9. Any time a patient needs oxygen equipment he will first visit a physician. The physician will initially conduct an oxygen test. If the patient qualifies based on their level of O2, the physician then writes a prescription for O2 equipment. The patient then goes to a DMEC, such as RO-TECH. The DMEC will generally accept the prescription and fill out a Certificate of Medical Necessity ("CMN") form. The CMN form consists of three parts: A, B, & C. Part A of the form is

filled out by the supplier. Only the physician fills out and sign parts B & C, and then DMEC can bill with a completed CMN and delivery ticket. The DMEC will deliver the equipment and retain a delivery ticket that is placed in the patient's file. The DMEC then takes the Assignment of Benefits ("AOB"), which lets Medicare know that they can pay the DMEC directly, the CMN form, and the delivery ticket and electronically files with Medicare. Medicare then pays the DMEC.

10. Once the equipment is delivered, the technicians train the patient how to use it. The physician orders the levels of oxygen. The equipment is serviced as needed by the DMEC. Most of the business is generated from the physician's office during the patient's visit. Once a patient is diagnosed with respiratory disease, he may use the equipment as needed for any duration. The DMEC will then be paid for the equipment every month that the patient uses it.

11. RO-TECH'S schemes included the following:

A. <u>FAILURE TO COMPILE THE FOLLOWING PAPERWORK WHICH WOULD VERIFY THAT THE OXYGEN EQUIPMENT WAS MEDICALLY NECESSARY AND DELIVERED</u>:

   i. <u>CERTIFICATE OF MEDICAL NECESSITY ("CMN")</u>;

   ii. <u>DELIVERY TICKETS</u>; and

   iii. <u>ASSIGNMENT OF BENEFITS ("AOB")</u>.

B. <u>SUBMISSIONS FOR PAYMENT FOR PATIENTS RECEIVING OXYGEN EQUIPMENT WHO DID NOT QUALIFY BASED ON THEIR OXYGEN TESTS, OR WERE NOT TESTED</u>;

C. <u>FRAUDULENT COMPLETION OF REQUIRED FORMS WITHOUT PHYSICIAN APPROVAL</u>;

D. <u>SUBMISSION FOR PAYMENT FOR DECEASED PATIENTS; and</u>

E. <u>FRAUDULENT CONCEALMENT DURING THE MONTANA INVESTIGATION</u>

4

## II.   HISTORY OF THE PROBLEMS

### 1.   TEXAS

12. In January 1996, RO-TECH acquired RHEMA MEDICAL ("RHEMA") located in the Dallas/Fort-Worth area. In June, 2000, RO-TECH decided to move the billing files from RHEMA located in the Irving, Texas, to RO-TECH's billing center in Texarkana, Texas. Later, and for the same reason, RO-TECH also decided to move billing files from its Lakewood, Colorado office, ROTH MEDICAL, Inc. ("ROTH") to Bell's office in Texarkana. Upon receiving the files, Bell commenced to audit the records. This audit took approximately two months to complete, and involved about 124 RO-TECH employees.

13. Upon completion of the RHEMA audit, Bell determined that a significant percentage of all the patient files were not in compliance because they lacked correct CMN forms, signed delivery tickets, and AOBs. Additionally, Bell discovered that a significant percentage of the patients receiving oxygen equipment did not qualify based on physician testing, or, in fact, were not even tested. Some of the patients receiving the oxygen equipment were even deceased. RHEMA was billing million of dollars per month without the proper paper work and for unqualified patients.

14. Bell immediately instructed her billing department to shut down the billing. However, RO-TECH, and the compliance department made a strategic decision to continue the billing despite the fraudulent billing practices.

### 2.   COLORADO

15. ROTH, RO-TECH's Colorado office, located in Lakewood Colorado, was

5

also significantly out of compliance for the same reasons. A majority of the prescriptions for oxygen equipment were either lacking the required paperwork, or were fraudulently entered into the system, misrepresenting that an unqualified patient qualified for the equipment.

### 3. LOUISIANA

16. Bell discovered that the Broussard/Lafayette, Louisiana division of RO-TECH called Taylor Medical, had fraudulently tested 150 O2 patients. RO-TECH refused to inform the government because of the pending settlement and Corporate Integrity Agreement, another activity to cover-up the billing schemes.

### 4. CORPORATE INTEGRITY AGREEMENT

17. Moreover, in February, 2002, RO-TECH, was in the process of settling with the government for other compliance issues that occurred in the Montana operations. RO-TECH was instructed to audit all of its billing centers before it entered into the settlement agreement with the government. RO-TECH falsely reported to the government that there were no additional billing issues other than Montana. Based on this information, the government entered into a Settlement and Integrity agreement[1] with RO-TECH. During this time, RO-TECH knew it had a multimillion dollar billing problem with RHEMA and ROTH. Additionally, the government will be entitled to damages for RO-TECH's fraud, noncompliance, and breach with regard to the terms of the Corporate Integrity Agreement. This amounts in part, to a reverse false claim to conceal, avoid or decrease an obligation to pay under the terms of the agreement, and as well a current claim for noncompliance and breach.

## FALSE CLAIMS ACT

---

[1] *See* Appendix A, Exhibit 2.

18. This is an action to recover damages and civil penalties on behalf of the United States and Bell arising from the false statements and claims made by Defendants in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729-3732.

19. The False Claims Act provides that any person who knowingly submits or causes to be submitted to the United States for payment or approval a false or fraudulent claim is liable to the government for a civil penalty of not less than $5500 and not more than $11,000 for each such claim, plus three (3) times the amount of damages sustained by the government because of the false claim.

20. The Act allows any persons having knowledge of a false or fraudulent claim against the government to bring an action in Federal District Court for themselves and for the United States government and to share in any recovery as authorized by 31 U.S.C. § 3730. Bell claims entitlement to a portion of any recovery obtained by the United States as *qui tam* Relator/Plaintiff and original source in this action.

21. A false certification occurs when the government has conditioned payment of a claim upon the certification of compliance with, for example, a statute or regulation. The claimant submits a false or fraudulent claim, within the meaning of the FCA, when he or she falsely certifies compliance with that statute or regulation.

22. Based on these provisions, Bell on behalf of the United States government seeks through this action to recover damages and civil penalties arising from the Defendants' submission of false claims for payment or approval. In this case, such claims were submitted to government entities for payment for durable medical equipment. *Qui tam* Relator/Plaintiff believes the United States has suffered significant damages as a result of the Defendants' false claims.

23. As required under the False Claims Act *qui tam* Relator/Plaintiff has provided the Attorney General of the United States and the United States Attorney for the Eastern District of Texas a statement of all material evidence and information related to this complaint. That disclosure statement was supported by documentary evidence, which was previously turned over to the government.

## CAUSES OF ACTION

**A.     Count I - False Claims (31 U.S.C. § 3729).**

24. *Qui tam* Relator/Plaintiff realleges and hereby incorporates by reference each and every allegation contained in paragraphs 1 through 23 of this complaint.

25. Based on the acts described above, Defendants knowingly violated one or more of the following:

   i.   knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

   ii.  knowingly makes, uses, or causes to be or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

   iii. conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

   iv.  knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

26. The United States Government unaware of the falsity of these claims, records, and/or statements made by the Defendants and in reliance on the accuracy thereof, paid the Defendants for the claims.

27. Due to the Defendants' conduct, the United States Government has suffered substantial monetary damages.

**RELIEF**

28. On behalf of the United States Government, Relator seeks to receive monetary damages equal to three times that suffered by the United States Government. In addition, Relator seek to receive all civil penalties on behalf of the United States Government in accordance with the False Claims Act.

29. The *qui tam* Relator seek to be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act.

30. The *qui tam* Relator seeks to be awarded all costs and expenses for this action, including attorneys' fees and court costs.

31. Pre-judgment interest at the highest rate allowed by law.

**PRAYER**

WHEREFORE, Relators pray that this Court enter judgment on behalf of Relator and against Defendants for the following:

   a. Damages in the amount of three (3) time the actual damages suffered by the United States Government as a result of Defendants' conduct;

   b. Civil penalties against Defendants equal to $11,000 for each violation of 31 U.S.C. 3729;

   c. *Qui tam* Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

   d. *Qui tam* Relator be awarded all costs and expenses of this litigation, including attorneys' fees and costs of court;

   e. Pre-judgment interest at the highest rate allowed by law; and

f. All other relief on behalf of the Relator or the United States Government to which they may be entitled and that the Court deems just and proper.

Dated April 5, 2004

UNITED STATES OF AMERICA, *ex rel.*
Sheila Bell-Messier

Respectfully submitted,

_____
Joel M. Androphy
Berg & Androphy
3704 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785

**ATTORNEY-IN-CHARGE FOR RELATOR/PLAINTIFF**

**OF COUNSEL:**

Darren W. Anderson
2010 Moores Lane, Ste. 101
Texarkana, Texas 75503
Telephone (903) 792-1229
Facsimile (903) 792-1329
DWA777@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing original complaint was forwarded via the United States Mail, certified, return receipt requested, by facsimile, or by messenger to the United States Attorney's Office in Beaumont, Texas, and the Department of Justice in Washington, D.C. on this the 5th day of April, 2004.

_____
Joel M. Androphy